John H. Pennock, J.
This is a proceeding by the petitioners, the Lloyd Harbor Study Group, Inc., the Nature Conservancy and its Long Island Chapter, Monroe Schneider, individually and as president of the North Shore Committee Against Nuclear and Thermal Pollution, the Long Island Environmental Council, Action for the Preservation and Conservation of the North Shore of Long Island, Inc., Charles H. Wood, Isabelle *136 Kanz and William Kanz (hereinafter referred to as the petitioners), praying for judgment annulling a determination of the respondent, Commissioner of Environmental Conservation of' the State of New York (hereinafter referred to as the Commissioner). (CPLR 7801.)
The determination under review was issued in letter form by the Commissioner on June 22,1972 and is set forth verbatim as follows:
“ Attention: Mr. Henry M. Doebler
“ Gentlemen:
“We have reviewed your application of June 22, 1971 pursuant to Section 21-b of the Water Quality Improvement Act of 1970 (P.L. 91-224) and. the Hearing Officer’s Report of the public hearing held, relative to said application.
“The Department of Environmental Conservation hereby certifies that there is reasonable assurance that the water quality standards of the waters of the State of Hew York will not be contravened by the proposal of Long Island Lighting Company for the construction and operation of a proposed 850 megawatt nuclear generating station on the north shore of Long Island at Shoreham in the Town of Brookhaven, County of Suffolk.
“ This certification is issued solely for the1 purpose of Section 21-b of the Water Quality Improvement Act of 1970 and should not be construed to indicate Departmental approval of the project or of pending applications for construction permits required by State law. The conditions recommended to be imposed by the Hearing Officer will be taken into consideration in conjunction with our review of the required State permits.
“I am forwarding a copy of this letter to the Hew York District Engineer, Corps of Engineers and to the parties-in-interest to this application.
Sincerely,
Henry L. Diamond
Commissioner
“ Long Island Lighting Company Executive Offices
250 Old County Road Mineóla, Long Island, Hew York 11501 be: Corps of Engineers — Hew York District
Mr. J. Biggane
Mr. G. Humphreys
Mr. F. Wallace
Mr. T. P. Curran
Mr. Irving Like ,
Mr. Donald Squires
Mr. Peter Icaacson
Mr. Peter B. Cooper
Mr. Edward Walsh
Mr. Ferdinand J. Shore
Mr. & Mrs. William CarI
Mr. and Mrs. William Kanz
Mr. Thomas Marcus, Jr.
Horth Shore Committee Against Huelear and Thermal Pollution
Mr. Charles Wood
Mrs. Claire Stein”
*137 This above determination was issued following a protracted public hearing which was ordered by the Commissioner upon the application of the Long Island Lighting Company (hereinafter referred to as LILCO) for a State water quality certification pursuant to subdivision (b) of section 21 of the Water Quality Improvement Act of 1970. (U. S. Code, tit. 33, § 1171, subd. [b].) This application by LILCO was filed June 22, 1971 and on August 17, 1971, the Commissioner caused notice to be published that a public hearing in respect to the application of LILCO would be held commencing August 31, 1971. A hearing officer was duly appointed by the Commissioner to take testimony and make findings in respect to such testimony as it related to the subject matter.
The hearings consumed twenty-one days intermittently and were concluded on June 7, 1972.
At the outset of the public hearings the hearing officer ruled that the hearing subject matter would not be limited to water quality standards under subdivision (b) of section 21 of the Water Quality Improvement Act, but pursuant to the Environmental Conservation Law, the scope of the hearing would include matters covered by the Environmental Conservation Law and the environmental effects of the Shoreham Nuclear Power Station (hereinafter referred to as the Shoreham Plant). The hearing officer also ruled out of the matter to be covered, any evidence on the radiological effects of the Shoreham Plant, including related water quality standards.
On June 22, 1972 the hearing officer submitted a “ Report of the Hearing Officer: Findings of Fact, Conclusions and Recommendations ” in which he recommended, inter alia, that the application be granted with certain conditions to be imposed in respect to surveillance after the plant is in operation.
The petitioners seek an order and judgment on its three causes of action as follows:
1. Setting aside, voiding ab initio and declaring a nullity the determination and certification of the commissioner that the Shoreham Plant would not contravene applicable water quality standards.
2. Declaring the determination and certification of the Commissioner to be illegal, ineffectual and beyond his jurisdiction.
3. Directing the commissioner to deny LILCO’s application as of June 21, 1972.
The three causes of action contained in the petition are basically as follows:
*138 first : That the commissioner failed to perform duties enjoined upon him (the department) by law (CPLR 7803, subd. 1) and proceeded in excess of jurisdiction (CPLR 7803, subd. 2), that the determination was made in violation of lawful procedure, affected by errors of law and was arbitrary, capricious and abuse of discretion (CPLR 7803, subd. 3) and that the determination was not supported by the substantial evidence (CPLR 7803, subd. 4).
second : That the commission respondent hearing officer did not take an advisory role in conducting the hearing, and expressly assumed a neutral position. Further that the commissioner in reaching his conclusion limited his review to the record and findings of the hearing officer and did not collaterally develop other facts through his department or otherwise. This, the petitioners urge, was arbitrary, capricious and in violation of lawful procedures.
third : That under the Federal Water Pollution Control Act (U. S. Code, tit. 33, § 1151 et seq.) the State of New York was required to adopt water quality standards for navigable waters within its jurisdiction approved by the Federal Environmental Protection Agency known as “ E.P.A.”. The petitioners urge that the standards were not approved by the E.P.A. and therefore the “ applicable water quality standards ” referred to in subdivision (b) of section 21 are not applicable but rather standards promulgated by E.P.A. Further, they urge, that New York State S.A. standards have not been approved so far as they relate to heated liquids as adopted to specific thermal criteria. Therefore, the petitioners contend that there was “ no lawful basis ” upon which the commissioner could issue the water quality certification.
The respondent commissioner in his answer first proffers “ objections in point of law ”. (CPLR 7804, subd. [f].) The commissioner avers that he is restrained from considering “ the discharges of radiological effluents into the waters of the State ”, that his “ failure ” to give consideration to the over-all environmental effects of the proposed nuclear Shoreham Plant or his failure to give consideration to environmental effects other than those affecting applicable water quality standards is because, as a matter of law, he is prohibited to so act as restrained by subdivision (b) of section' 21 of the Federal Water Pollution Control Act. (U. S. Code, tit. 33, § 1171, subd. [b].) It is the Commissioner’s position that he can only consider the issuance of a certificate whether or not there was reasonable assurance *139 that the discharge from the Shoreham Plant would not violate applicable water quality standards.
The hearing examiner considered the proceeding as quasi-judicial. This was in error as the hearing was purely a statutory administrative hearing. Further the examiner broadened the boundaries of the subject matter to include environment impact which was in error. “ It is, therefore, my ruling that the hearing will concern itself with all matters except the radiological consequences which I perceive to be within the jurisdiction of the Atomic Energy Commission.” The public notice was limited to the purpose of section 21 of the Federal Water Pollution Control Act. Further the commissioner abandoned all of- the findings of the examiner and the hearing record and issued a certificate of reasonable assurance required by Federal statute. (U. S. Code, tit. 33, § 1171, subd. [b].) Apparently the commissioner relied upon the examiner’s findings of “ reasonable assurance ” (see 6 NYCRR Part 704. Criteria Governing Thermal Discharge [Heated Liquids]). However, the Commissioner made no express finding to that effect.
I see no error on the part of the Commissioner in eliminating the issue of radiological releases from the nuclear plant. In fact the Commissioner made no findings of fact, nor did he adopt any of the findings of the hearing examiner. At least he did not say so in his certification. (See letter of certification, supra.) Further, he has not made any determination in respect to the protective conditions set forth by the hearing examiner. As I see it, this is his prerogative and he has chosen to disregard the findings in total. There is no doubt but much time and effort was expended by the public hearing and this could be held as futile and unnecessary. However, this court cannot hold that such decision was arbitrary or capricious, although it seems unfair to the citizens of the State to proffer a public hearing when in finality it shall have no employment in the decision of the Commissioner. This type of government activity entraps citizens to spend large sums of money for expert witnesses to oppose applications such as LILCO made without prior knowledge that such testimony shall not be considered in the Commissioner’s decision function. What possible purpose could be accomplished by requiring detailed engineering, scientific and ecololgical impact testimony which the Commissioner is free to ignore entirely? As I see it that is his prerogative and there are no constitutional or statutory refinements to the contrary. Therefore until legislation fills this void, the public hearings are nothing more than a pro forma ritual and a hollow *140 exercise by a concerned public in respect to environmental issues. It is not for this court to legislate or define rules and regulations. The Environmental Conservation Law has no provisions requiring public hearings except as to creation of standards and rules. (Environmental Conservation Law, § 15, tit. 1.) This section does not apply to this proceeding, nor does the Federal statute precisely require a public hearing, but rather suggests that if the State deems it appropriate, procedures for public hearings in connection with specific applications shall be made. This State has not deemed it appropriate and has not adopted any specific procedure which is binding upon the Commissioner. Therefore, the court must find that the Commissioner has not acted arbitrarily or capriciously on the basis that there exists no law, rule or regulation which he has violated.
This court has entertained and discussed the proceeding in total having been influenced by the record of over 5595 pages because the underlying questions were of general interest and of substantial public importance and likely to arise in the future, and it is important' that the public be aware of the fact that public hearings, such as the one held here, are of no persuasive value.
Therefore the court determines that:
1. It has no power in law to set aside the certificate of the Commissioner.
2. That the Commissioner had jurisdiction to issue the certificate without any public hearing.
3. The court has no power in law to direct that the certificate be annulled.
4. That each of the three causes of action is dismissed.